UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Federated Mutual Insurance Company,                  Civil No. 18-714 (PAM/DTS)


                              Petitioner,

v.                                               **MEMORANDUM AND ORDER**

Federated National Holding Company, Inc.

                              Respondent.

_____

This matter is before the Court on Respondent's Motion to Dismiss and Petitioner's

Motion to Confirm Arbitration Award.  For the following reasons, the Motion to Dismiss is

denied and the Motion to Confirm is granted.

**BACKGROUND**

This case arises out of the parties' arbitration relating to the similarities in their

corporate names.  Petitioner Federal Mutual Insurance Company and Respondent Federated

National Holding Company, Inc. are insurance companies.  Petitioner is based in Minnesota

and Respondent is based in Florida.

For many decades, Petitioner has owned rights in the trademarks "Federated,"

"Federated Insurance," "Federated Mutual," and other marks containing the word

"Federated" relating to insurance services.  Before 2012, Respondent was named 21st

Century Holding Company.  When Respondent changed its name to Federated National,

Petitioner asserted its trademark rights.  The parties resolved their dispute in 2013 by executing a Co-Existence Agreement ("Agreement") under which Respondent agreed to cease using the term "Federated" in its name and the names of its affiliates within seven years.  (Pet. Ex. A Art. 2.A.10.)  In the interim, Respondent agreed to minimize confusion within the industry given its similarity to Petitioner's name.  (Id. Art. 2.A.)  For example, Respondent agreed to include a statement on its website that it is unrelated to Petitioner and to train its employees to help avoid customer confusion.  (Id. Art. 2.A.6, 2.A.7.)  The parties agreed to resolve any dispute by arbitration.  (Id. Art. 4.)  The parties further agreed that the arbitrator could decide any dispute on the written submission and on an expedited basis.  (Id.)  Lastly, the parties agreed that "[a]ny judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof."  (Id.)  The Agreement is to be "construed and interpreted in accordance with the laws of Minnesota."  (Id. Art. 6.J.)

According to Petitioner, Respondent did not comply with the Agreement and, in fact, created even more confusion in the industry.  Petitioner ultimately initiated arbitration with the American Arbitration Association in July 2016.[1]  The arbitration was lengthy and contentious.  On February 16, 2018, the Illinois-based arbitrator issued an award concluding that Respondent had breached various aspects of the Agreement, but denying Petitioner's

---

[1] Respondent simultaneously filed suit in the Southern District of Florida seeking a declaration of non-infringement.  The court determined that the issues presented were subject to arbitration.  Federated Nat'l Holding Co. v. Federated Mut. Ins. Co., Civil No. 16-61743, Docket No. 4 (Moreno, J.).

trademark infringement claim ("Award").  (Pet. Ex. C at 15-16.)  Among other things, the arbitrator ordered Respondent and its affiliates to cease using the term "Federated" in trade names, marketing, advertising, websites, stationery, email, contracts, policies, and riders within 90 days of the date of the Award.  (Id. at 15.)

Respondent complained to Petitioner that it could not meet the deadline established in the Award.  Petitioner proposed an adjusted schedule to accommodate Respondent in exchange for Respondent's agreement that it would not challenge the Award.  Respondent responded with an alternative time line that was unacceptable to Petitioner.  On March 14, 2018, Petitioner filed the instant Petition to Confirm the Award under § 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9.  Petitioner does not challenge the arbitrator's denial of its trademark claim.

On April 6, 2018, Respondent filed an Application and Motion to Confirm, in Part, and Vacate or Modify, in Part, the Arbitration Award in the Northern District of Illinois under §§ 9-10 of the Federal Arbitration Act ("FAA").  Federated Nat'l Holding Co. v. Federated Mut. Ins. Co., Civil No. 18-2489, Docket No. 1 (Norgle, J.).  Specifically, Respondent seeks to confirm the Award insofar as it held that Respondent did not infringe Petitioner's trademark and to vacate the holding that Respondent violated the Agreement. Petitioner moved to stay that case pending resolution of this case.  The motion is fully briefed but has not yet been decided.

Respondent now moves to dismiss the Petition for lack of jurisdiction and Petitioner moves for confirmation of the Award.

## DISCUSSION

### A.       Motion to Dismiss

Respondent challenges the Court's subject matter and personal jurisdiction and argues that venue here is improper and that the case should be transferred to the Northern District of Illinois.

### 1.       Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may challenge the complaint either on its face or on the factual truthfulness of its averments.  Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).  When a defendant challenges the complaint on its face, the Court reviews the pleadings and affords the plaintiff the same protections that it would receive on a Rule 12(b)(6) motion to dismiss. See Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  The Court takes the factual allegations as true and will only dismiss the complaint if the plaintiff fails to allege an essential element for subject matter jurisdiction.  See Titus, 4 F.3d at 593.

The FAA "confers no federal jurisdiction, but instead requires 'an independent jurisdictional basis.'"  CMH Homes, Inc. v. Goodner, 729 F.3d 832, 835 (8th Cir. 2013) (quoting Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 581-82 (2008)).  Petitioner asserts that the Court has subject matter jurisdiction over the Petition under both federal

question and diversity jurisdiction.  Respondent contests both jurisdictional bases.

### a.   **Federal Question**

According to Petitioner, the Court has federal question jurisdiction because the underlying dispute involved a federal trademark claim.  Respondent argues that because Petitioner did not include that claim in the Petition, there is no federal question presented.  The issue is whether the Court should assess jurisdiction based on the face of the Petition or if it should "look through" the Petition to the underlying arbitration to determine whether a federal question exists.

The Supreme Court has held that the look-through approach applies in the context of § 4 of the FAA (petitions to compel arbitration), but has not addressed whether it applies to actions brought under §§ 9-10 of the FAA (petitions to confirm or vacate).  Vaden v. Discover Bank, 556 U.S. 49, 62 (2009).  The Eighth Circuit Court of Appeals has yet to address this issue and the circuits that have are split.  The First and Second Circuit Courts of Appeals have held that the look-through approach applies to petitions under §§ 9-10 of the FAA and the Third and Seventh Circuit Courts of Appeals have held to the contrary. Compare Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 40 (1st Cir. 2017), and Doscher v. Sea Port Grp. Sec., LLC, 832 F.3d 372, 388 (2d Cir. 2016), with Goldman v. Citigroup Global Mkts., Inc., 834 F.3d 242, 254-55 (3d Cir. 2016), and Magruder v. Fidelity Brokerage Servs., LLC, 818 F.3d 285, 288 (7th Cir. 2016).

Respondent argues that the Court should decline to apply the look-through approach because there are fundamental differences between §§ 4 and 9 of the FAA that make the reasoning in Vaden inapplicable to cases brought under § 9.  Petitioner responds that the court should apply the look-through approach because doing so reinforces the federal policy favoring arbitration and provides a consistent jurisdictional approach to the FAA.

The Court has carefully reviewed the FAA and the cases analyzing the issue and concludes that the look-through approach should apply in the context of § 9 petitions.  The Court is especially persuaded by the Second Circuit Court of Appeals' well-reasoned and thorough analysis in Doscher, 832 F.3d at 379-88, and agrees that applying a look-through approach avoids "absurd or bizarre inconsistencies in jurisdiction" among the FAA's provisions.  Id. at 386.   The Court also notes that, although pre-Vaden, the Eighth Circuit held that a district court had federal question jurisdiction over a petition to confirm an arbitration award with respect to state-law claims even though the arbitrator denied the petitioner's federal claims.  See Fendelman v. Stein, 133 F.3d 921 (8th Cir. 1998) ("[T]he arbitration award [denying the federal claims] did not divest the federal court of its subject matter jurisdiction.").  The Court therefore believes that the Eighth Circuit would follow a similar approach post-Vaden.

Here, looking through to the underlying the dispute, which involved a claim under the federal trademark laws, the Court has federal question jurisdiction over the Petition.

6

### b.   __Diversity__

Even if there were no federal question jurisdiction, the Court is satisfied that diversity jurisdiction exists.  The issue with respect to diversity is whether Petitioner has properly established the amount in controversy.[2]  To do so, Petitioner must prove by a preponderance of the evidence that the amount in controversy exceeds the $75,000 threshold for diversity jurisdiction.  Diversity jurisdiction does not exist if it "appears to a legal certainty that the value of the claim is less than the required amount."  Dyrdal v. Enbridge (U.S.), Inc., 738 F. Supp. 2d 927, 930 (D. Minn. 2010) (Kyle, J.).

Respondent argues that Petitioner has failed to meet its burden because it primarily sought injunctive relief in the arbitration and was only awarded $1.00 in damages.  Petitioner responds that the value of the injunctive relief should be assessed in considering whether the amount in controversy is met.  Petitioner is correct.  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  State Farm Mut. Auto. Ins. Co. v. Lake Street Chiropractic Clinic, P.A., No. 16-4017, 2017 WL 1014336, at *2 (D. Minn. Mar. 14, 2017) (Magnuson, J.).  The question is whether Petitioner has sufficiently established that the injunctive relief has at least $75,000 in economic value.  The Court is satisfied that the threshold amount is met here.  The Petition adequately alleges that the Award's injunction obligating Respondent to "change its name away from a name that is confusingly similar to

---

[2] There is no question that the parties are diverse.

Petitioner's within 90 days has at least [$75,000 in] economic value to Petitioner." Pet. ¶ 3. Although it is difficult to determine the exact value of the injunction to Petitioner, the Court is satisfied that it exceeds the jurisdictional minimum. Respondent's name change will dispel confusion within the insurance industry that will no doubt result in excess of $75,000 in value to Petitioner.

### 2.       Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the non-moving party must establish a prima facie case that personal jurisdiction exists. See Digi–Tel Holdings, Inc. v. Proteq Telecomm. Ltd., 89 F.3d 519, 522 (8th Cir. 1996). In determining whether the non-moving party has set forth a prima facie case, the Court must view all evidence in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. See id.

In a Rule 12(b)(2) Motion, the Court must examine whether the non-moving party has established a prima facie case of personal jurisdiction. The Court must base its determination on written submissions in the light most favorable to the non-moving party. Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003) (citation omitted). The Court can exercise personal jurisdiction over a nonresident defendant if (1) Minnesota's long-arm statute, Minn. Stat. § 543.19, is satisfied; and (2) the exercise of personal jurisdiction does not offend due process. Id. Because Minnesota's long-arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, see e.g., In re Minnesota Asbestos Litigation,

552 N.W.2d 242, 246 (Minn. 1996), the Court need only evaluate whether the exercise of personal jurisdiction comports with the requirements of due process. <u>Guinness Import Co. v. Mark VII Distribs., Inc.</u>, 153 F.3d 607, 614 (8th Cir. 1998).

Due process requires that Respondent have "certain minimum contacts" with Minnesota "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (citation omitted). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." <u>World–Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980). There must be some act by which the defendant "purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958). In contrast, contacts that are merely random, fortuitous, attenuated, or that are the result of "unilateral activity of another party or a third person" will not support personal jurisdiction. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985).

The Eighth Circuit has established a five-factor test to determine the sufficiency of a defendant's contacts: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation between the contacts and the action; (4) the forum state's interest in the litigation; and (5) the convenience of the parties. <u>Epps v. Stewart Info. Servs. Corp.</u>, 327 F.3d 642, 648 (8th Cir. 2003). The third factor distinguishes between specific and

general jurisdiction.  <u>Digi-Tel</u>, 89 F.3d at 523 n.4.  "Specific jurisdiction can only be found if the controversy is related to or arises out of the defendant's contacts with the forum state." <u>Johnson v. Woodcock</u>, 444 F.3d 953, 956 (8th Cir. 2006) (quotation omitted).  In contrast, general jurisdiction requires a showing that the defendant's contacts with the forum state are "continuous and systematic even if there is no relationship between the contacts and the cause of action."  <u>Id.</u> (quotation omitted).

Respondent argues that the Court lacks personal jurisdiction over it because it has no contacts with Minnesota and because the facts underlying the case bear no connection to the state.

### a.   <u>General Jurisdiction</u>

Respondent asserts that it has no contacts with Minnesota.  It is a Florida holding company that does no business here, does not have an office or property here, and has never insured any person or business here.  Respondent further asserts that it does not advertise or direct marketing activities to Minnesota and that it maintains a passive website that does not conduct commercial activity.

Petitioner does not dispute Respondent's assertions, but argues that Respondent is subject to jurisdiction through the activities of one its subsidiaries, FedNat Adjusting. Specifically, Petitioner notes that FedNat Adjusting has engaged in four separate subrogation negotiations and settlements with Petitioner between 2013 and 2017.  (<u>See</u> Murphy Decl.) During the course of the negotiations, FedNat Adjusting and Petitioner exchanged various

communications.  (Id. ¶ 3.)  Petitioner does not contend that anyone from FedNat Adjusting traveled to Minnesota to negotiate the subrogation claims.

Any communications or agreements Petitioner may have had with FedNat Adjusting are insufficient to confer general jurisdiction.  The contacts of a subsidiary are not automatically imputed to the parent corporation for purposes of establishing personal jurisdiction.  See Steinbuch v. Cutler, 518 F.3d 580, 589 (8th Cir. 2008) ("Whether a subsidiary is subject to personal jurisdiction in the state has no effect on the jurisdictional inquiry regarding its parent.").  Instead, there must be a showing that the parent "dominates and controls the subsidiary."  Id.  Petitioner has made no such showing.  Therefore, even if the subrogation communications were enough to establish jurisdiction over FedNat Adjusting, they are irrelevant as to Respondent.  Based on the record, the Court concludes that it does not have general jurisdiction over Respondent.

### b.   **Specific Jurisdiction**

Petitioner argues that the Court can exercise specific jurisdiction over Respondent based on the Agreement.  Respondent disagrees, arguing that the Agreement does not bear a close enough relationship to Minnesota to warrant a finding of specific jurisdiction.

"In breach of contract cases, courts assess the purposeful availment component of personal jurisdiction by considering (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing." St. Paul Fire and Marine Ins. Co. v. Courtney Enters., Inc., 108 F. Supp. 2d 1057, 1060–61

(D. Minn. 2000) (Montgomery, J.).  These factors support a finding of specific jurisdiction in this case.

Although entering into a contract with a Minnesota company is alone insufficient to create specific jurisdiction, <u>Iowa Elec. Light & Power Co. v. Atlas Corp.</u>, 603 F.2d 1301, 1303 (8th Cir. 1979), the record supports a finding that Respondent purposefully availed itself of the benefits and protections of Minnesota law.  First, the Agreement is governed by Minnesota law, which demonstrates Respondent's "deliberate affiliation" with Minnesota. <u>Id.</u> at 1061; <u>see also</u> <u>Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.</u>, 111 F.3d 1386, 1390 (8th Cir. 1997) ("While a choice of law provision in itself is insufficient to create personal jurisdiction, it remains a relevant consideration in determining whether a defendant has purposefully availed itself in the forum state.").  Second, Respondent understood that its performance of the Agreement would affect Petitioner's business in Minnesota.  Specifically, Respondent's promised name change would remove the confusion between Petitioner and Respondent and allow Petitioner, a Minnesota company, to more fairly compete in the industry.  Third, the Agreement contemplated seven years of ongoing contractual obligations between the parties in and outside of Minnesota.  Those obligations required Respondent to regularly communicate with Petitioner in Minnesota.  Together, these facts establish that Respondent has a substantial connection to Minnesota for purposes of this case.  The Court therefore has specific jurisdiction over Respondent.

### 3.    Venue

Respondent next argues that the Court should dismiss the case based on improper

venue.  The issue of venue is governed by 28 U.S.C. § 1391(b), which provides that a civil

action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are
> residents of the State in which the district is located; (2) a judicial district in
> which a substantial part of the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the subject of the action is
> situated; or (3) if there is no district in which an action may otherwise be
> brought as provided in this section, any judicial district in which any defendant
> is subject to the court's personal jurisdiction with respect to such action.

A corporate defendant is "deemed to reside . . .  in any judicial district in which such

defendant is subject to the court's personal jurisdiction with respect to the civil action in

question." 28 U.S.C. § 1391(c)(2).  As already explained, Respondent is subject to personal

jurisdiction in Minnesota and is therefore deemed to reside in Minnesota.  As a result, venue

is proper under § 1391(b)(1), and dismissal is not warranted.

### 4.    Transfer

Respondent argues that the Court should transfer the case to the Northern District of

Illinois under 28 U.S.C. § 1404(a) to be joined with the later-filed case in which Respondent

has petitioned to vacate the Award.

Section 1404(a) requires the Court to consider three factors when determining whether

transfer is appropriate:  (1) the convenience of parties; (2) the convenience of witnesses; and

(3) the interests of justice.  However, a court is not limited to considering only these three

factors, because transfer determinations "require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997).

Here, the factors do not weigh in favor of transfer. The parties can litigate this matter as conveniently in Minnesota as they can in Illinois. Indeed, the case will be decided on the papers without discovery, witness testimony, or ongoing litigation, so there is no undue inconvenience to Respondent or witnesses in remaining in this forum. Nor do the interests of justice compel transfer. The case was first filed here and should remain here given the Court's jurisdiction over the case and the parties.

**B.      Motion to Confirm**

Petitioner moves for confirmation of the Award as it relates to the Agreement and requests attorney's fees and costs incurred in bringing the instant motion and defending the case in Illinois. Petitioner also moves for sanctions given Respondent's non-compliance with the Award to date. Respondent responds to the motion by repeating its jurisdictional arguments and requesting that the Court stay this matter pending resolution of the case in Illinois. The Court declines to do so. As discussed, this case – which preceded the case in Illinois – is properly before the Court and ripe for determination. The matter is fully briefed and Respondent has incorporated the arguments and analysis set forth in its Application and Motion to Confirm, in Part, and Vacate or Modify, in Part, the Arbitration Award in this action, which has allowed the Court to assess the matter in full. (Resp't.'s Opp'n Mem.

(Docket No. 24) at 6; Rudd Decl. Ex A.)

Under the FAA, a court must grant a motion to confirm an arbitration award unless the award is vacated, modified, or corrected.   9 U.S.C. § 9.   A court may only vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).   A court has "no authority to reconsider the merits of an arbitration award, even when the parties allege that the award rests on factual errors or on a misinterpretation of the underlying contract." Med. Shoppe Int'l, Inc. v. Turner Invs, Inc., 614 F.3d 485, 488 (8th Cir. 2010) (citation omitted).   Likewise, claims "that the arbitrator disregarded the law, are not included among those specifically enumerated in § 10 and are therefore not cognizable." Id. at 489.

Respondent does not claim any corruption, fraud, partiality, or prejudicial misbehavior by the arbitrator.   Instead, Respondent argues that the arbitrator exceeded his authority by ruling that Respondent had to change its name within 90 days of the Award and that he

manifestly disregarded the law by doing so.[3]  Respondent also argues that it did not have a sufficient opportunity to be heard in the arbitration.  These arguments, however, are merely disagreements with the arbitrator's factual and legal analysis and remedies and are not grounds to vacate an arbitration award under the FAA.  The arbitrator was vested with broad authority to decide the dispute between the parties and to fashion any remedy he deemed "just and equitable."  (Kramer Decl. Ex. C at 47; see also Pet. Ex. A Art. 4.)  The arbitrator did so thoroughly and within the confines of his authority.  (See Pet. Ex. C .)  Further, the arbitration was extensively briefed and argued, and the Court is satisfied Respondent had ample opportunity to meaningfully present its case.

Because Respondent has failed to establish a basis to vacate the award, the arbitration award must be confirmed.  The Court declines to award attorney's fees or any other sanction.

---

[3]  As to manifest disregard, Respondent argues that the arbitrator's order violates Florida law requiring shareholder approval for any changes to a public company's articles of incorporation, including name changes.  There is no indication in the record that Respondent advised the arbitrator of any such potential conflict.  Furthermore, Respondent could have circumvented any corporate governance problems by promptly calling a shareholder meeting to address the issue.

**CONCLUSION**

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Defendant's Motion to Dismiss (Docket No. 7) is **DENIED**; and

2.      Plaintiff's Motion to Confirm Arbitration Award (Docket No. 14) is

**GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: <u>June 22, 2018</u>

                                        *s/ Paul A. Magnuson*
                                        Paul A. Magnuson
                                        United States District Court Judge

17